## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case Number: 21-cr-00195-TFH |
| | : | |
| DEBORAH SANDOVAL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### MOTION TO SEVER DEFENDANTS
(Based on Impermissible Joinder)

COMES NOW, DEBORAH SANDOVAL, through her court appointed counsel and moves pursuant to *Fed.R.Crim.P.* 8(b); *Fed.R.Crim.P.* 12(b)(3)(B)(iv) and *Fed.R.Crim.P.* 14, to sever her case from that of Salvador Sandoval, Jr. for reasons set forth below.

### *Procedural Posture*

Ms. Sandoval was initially charged by Criminal Complaint filed on February 18th, 2021. (ECF 1) Subsequent to that filing she was formally charged by Indictment on March 9th, 2021 (ECF 19), with Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2); Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(l)); (Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2));   (Disorderly Conduct in a Capitol

Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D)); and (Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code. Section 5 l04(e)(2)(G)). She was subsequently charged by a Superseding Indictment on December 17th, 2021, (ECF 38) with violating the same Sections with the exception of Section 1512(c)(2).[1] A status hearing is scheduled for March 23rd, 2022. A Scheduling Order has not issued, as of the date of this filing.

### *Background Information*

Ms. Sandoval is one of hundreds, who have been charged with offenses related to the January 6th, 2021 storming of the Capitol Building. She came to the Washington Metropolitan Area on or about January 5th, 2021 by vehicle with two friends. She did not come to Washington, DC with the intent to go to the Capitol Building. Instead, she came to Washington DC to attend a political rally at the invitation and urging of the Former President.[2] That rally was held at the Ellipse; a 52-acre park, located on the South Side of the White House. Following the rally at the Ellipse, Ms. Sandoval, along with her companions, proceeded to the Capitol at the invitation and urging of the Former President, who told the crowd he would be walking with him.[3]

Although the defendants are related, they do not live together. They do not share telephone, computer or email addresses. Moreover, they do not share bank

---

[1] The most significant feature of both charging documents is the absence of a conspiracy count, pursuant to 18 USC §371 or any other legal basis for joinder of these defendants.

[2] This was her second visit to Washington DC to attend a political rally in support of Donald Trump. The first visit occurred on ***. Salvador Sandoval did not travel with her on either of the two trips to Washington, DC.

[3] Neither of her companions have been charged with an offense.

or credit card accounts.  Most important to this filing, is the fact that they do not coordinate daily activities.  To that point, it is undisputed that Salvador Sandoval came to the Washington Metropolitan Area on an unknown date by separate vehicle from Deborah Sandoval.  He was accompanied by persons who did not storm the Capitol or assault law enforcement.  Neither of his companions have been charged with an offense; suggesting that his decision to enter the Capitol Building was spontaneous, neither coordinated or planned.

To date, there is no discovery material in the way of phone calls, text messages or e-mails, showing any coordination between the Sandovals, during their travel or during the protests outside the Capitol.  In fact, the discovery material shows them entering the Capitol on different sides of the building.  Furthermore, unlike Deborah Sandoval, Salvador Sandoval is charged with felonies that include assault on law enforcement personnel.  A fact that presents an unavoidable spillover effect at the time of trial, should the two be tried together.

## *Applicable Law*

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14 in turn, permits a district court to grant a severance of defendants if "it appears that a defendant or the government is prejudiced by a joinder."  Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government. Thus, the Rule provides:

"[i]f it appears that a defendant or the government is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

In interpreting Rule 14, the Courts of Appeals have frequently expressed the view that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to mandate severance. *See, e.g.*, *United States v. Benton,* 852 F.2d 1456, 1469 (CA6), cert. denied, 488 *United States* 993, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988); *United States v. Smith*, 788 F.2d 663, 668 (CA10 1986); *Keck*, supra, at 765; *United States v. Magdaniel-Mora*, 746 F.2d 715, 718 (CA11 1984); *United States v. Berkowitz*, 662 F.2d 1127, 1133-1134 (CA5 1981); *United States v. Haldeman,* 181 *United States* App.D.C. 254, 294-295, 559 F.2d 31, 71-72 (1976), cert. denied, 431 *United States* 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

A review of these and other cases makes clear that a defendant would be entitled to severance under Rule 14 when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, **or prevent the jury from making a reliable judgment about guilt or innocence**." *United States v. Zafiro*, 506 at 539, 113 S.Ct. 933.  It is respectfully suggested that while there is nothing at this time to suggest antagonistic defenses, there clearly is a spillover

effect that redounds to the disadvantage of Ms. Sandoval.   Moreover, it is not likely that jury instructions will be enough to diminish the anxiety or anger that will be experienced by a DC Jury being shown images of a violent assault being committed by Ms. Sandoval's co-defendant.

Manner: It has been said that severance may be required in two situations--when the evidence against one defendant is "far more damaging" than the evidence against the other, and when co-defendants rely on mutually contradictory defenses. *United States v. Tarantino*, 846 F.2d 1384, 1398-99 (U.S.App. D.C.). When, as in this case, the evidence against one or more defendants is "far more damaging" than the evidence against another defendant, "the prejudicial spillover may have deprived a defendant of a fair trial." *Id*. at 1398. The danger is that the cumulation of evidence against another defendant "may lead the jury to be either confused or prejudiced in assessing the evidence against (a) particular defendant." *United States v. Butler*, 822 F.2d 1191, 1194 (U.S.App. D.C.1987).

It is respectfully suggested, that the case *sub judice*, sits amongst those in which appellate courts have overturned a trial court's denial of a motion to sever.   The common thread in these cases is the clear disparity between the weight, quantity, or type of the evidence against the movant when compared to a co-defendant. *See, e.g., United States v. Sampo*l, 636 F.2d 621, 645-48; *United States v. Mardian*, 546

5

F.2d 973, 977-81 (U.S.App.D.C.1976); Severance becomes mandatory "where the failure to sever denies the defendant a fair trial." *United States v. Wright*, 783 F.2d 1091, 1095 (U.S.App.D.C.1986). Severance may also be warranted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States* 113 S.Ct. 933 (1993) In short, in some circumstances, a codefendant's misbehavior can be so extreme as to give rise to prejudice that cannot be mitigated by curative instructions. Hence, either a mistrial or severance would be required. *See, e.g., United States v. Mannie*,509 F.3d 851, 857 (7th Cir.2007) (prejudice warranting mistrial resulted from a jury's exposure to a codefendant "garbed in prison attire verbally assaulting his attorneys, a campaign of intimidation by members of the gallery, [and] a violent courtroom brawl").

### *Argument*

*A. The Defendants' Offenses are not the Same or of Similar Character*

Deborah Sandoval is charged with various iterations of trespass; while Salvador Sandoval is charged with violent assaults. The offenses could not be more different in character. The video and photo evidence of violence that is likely to be shown to the jury has nothing to do with Ms. Sandoval; who is recorded walking through the crypt while draped in an American Flag. There are no photos of the two defendants together inside the Capitol or on the Capitol Grounds.

*B. Presentation of Prejudicial Evidence – Spillover Effect*

Rule 14 provides that "[i]f the joinder of offenses ... appears to prejudice a defendant ... the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." *Fed.R.Crim.P.* 14(a). The defendant carries the burden of demonstrating prejudice resulting from a failure to sever, *United States v. Carson*, 455 F.3d 336, 374 (D.C. Cir. 2006) Ms. Sandoval acknowledges that severance is proper "only if there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence." However, she calls the courts attention to a number of cases, some of which appear below, where severance was either granted or recognized as appropriate given the right circumstance.

None of the cited examples are more serious than the charges faced by her co-defendant, which suggest an assault on our county's democratic foundation; the certification of a presidential election. *See, generally*, *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (discussing Rule 8(b)); *United States v. Litwok*, 678 F.3d 208, 217-18 (2d Cir. 2012) (misjoinder of mail fraud and tax counts not harmless error because no limiting instruction given to jury, evidence not overwhelming, and evidence would not have been admissible in separate trials); *United States v. Hawkins*, 589 F.3d 694, 705 (4th Cir. 2009) (misjoinder of weapons possession and carjacking counts not harmless error

because counts unrelated and evidence from unrelated charges not admissible in separate trials), amended by 776 F.3d 200 (4th Cir. 2015); *United States v. Singh*, 261 F.3d 530, 534 (5th Cir. 2001) (misjoinder of firearms counts with harboring counts not harmless error because evidence weakly supported firearm charge and seriously prejudiced defendant); *United States v. Terry*, 911 F.2d 272, 277 (9th Cir. 1990) (misjoinder of drug-possession and firearm counts not harmless error because counts unrelated and inculpatory characterization of defendant as drug dealer likely influenced jury's finding on firearm count); *United States v. Adkinson*, 135 F.3d 1363, 1374 (11th, Cir. 1998) (misjoinder of codefendants on counts of conspiracy not harmless error because substantial prejudice resulted from spillover of testimony and exhibits presented by government to tie together "far-flung series of events"); *United States v. Richardson*, 161 F.3d 728, 734-35 (D.C. Cir. 1998) (misjoinder of counts of unlawful possession of firearm by convicted felon, unlawful possession of ammunition by convicted felon, and threatening to injure not harmless error because evidence on weapons charges insubstantial, evidence on threat count was most likely not admissible in separate trial for weapons counts, and evidence of spillover likely unfairly influenced jury).

*C.  There is no Conspiracy Count*
*The Charges are not Unified by a Substantial Identity of Facts and/or Participants.*

The typical scenario involving joinder of defendants also has a joinder of offenses; which are tied together by a conspiracy; criminal entity or joint endeavor. *See, eg.* see, e.g., *United States v. Azor*, 881 F.3d 1, 10-11 (1st Cir. 2017) (joinder of defendants proper because evidence showed defendant's connections with other defendants charged with distribution conspiracy); *United States v. Fazio*, 770 F.3d 160, 166 (2d Cir. 2014) (joinder of defendants charged with racketeering and extortion proper because defendants all participated in organized crime); *United States v. Walker*, 657 F.3d 160, 169 (3d Cir. 2011) (joinder of defendants proper where both defendants charged with robbery, cocaine, criminal conspiracy, and possession of firearm because charges from same series of transactions); *United States v. Cannady*, 924 F.3d 94, 102 (4th Cir. 2019) (joinder of defendants facing individual attempt charges and general conspiracy charges proper because charges part of same drug distribution scheme); *United States v. Benedict*, 855 F.3d 880, 885 (8th Cir. 2017) (joinder of defendants proper despite some evidence focusing on 1 defendant because defendants part of same conspiracy); *United States v. Barragan*, 871 F.3d 689, 701 (9th Cir. 2017) (joinder of defendants proper because defendants involved in racketeering conspiracy and drug crimes); *United States v. Yurek*, 925 F.3d 423, 436 (10th Cir. 2019) (joinder of defendants proper because defendants married couple who engaged in tax evasion and bankruptcy fraud);

*United States v. Mosquera*, 886 F.3d 1032, 1037, 1041-42 (11th Cir. 2018) (joinder of defendants proper because defendants participated in same criminal conspiracy and judge instructed jury to consider case against each defendant separately); *United States v. Bikundi*, 926 F.3d 761, 780-82 (D.C. Cir. 2019) (joinder of defendants proper because codefendants married and involved in same conspiracy, and jury instructions required separate consideration of each count).

*No Evidence of Collaboration*

The absence of a conspiracy count is a tacit admission on the part of the government, that there is no evidence that Ms. Sandoval conspired with her son to enter the Capitol or its grounds on January 6th, 2021.   Moreover, there is no evidence that they came to Washington DC together or individually with the goal of stopping the certification of the electoral vote.   Finally, she did not encourage or condone any acts of violence, before or on the day in question.   That idea was planted by the Former President and his cohorts, as they herded and then incited an unsuspecting group to protest and then storm the Capitol.   As a result, any evidence of violence should not be introduced in Ms. Sandoval's trial.

## Conclusion

Evidence which includes videos and photos of violence allegedly committed by Salvadore Sandoval or others, has no place in Deborah Sandoval's trial.  The most effective way to prevent the certain prejudicial spillover effect is to sever the defendants and have them answer directly to the evidence relevant to them as an individual.

*Prayer*

Wherefore, Deborah Sandoval prays this Honorable Court will grant her motion for severance and issue a Scheduling Order for trial and suspense dates for the further production of discovery.

Respectfully submitted,
ANTHONY D. MARTIN, PC

By:   /S/
Anthony D. Martin, 362-537
GREENWAY CENTER OFFICE PARK
7474 Greenway Center Drive, Ste 150
Greenbelt, MD 20770
(301) 220-3700; (301) 220-1625) (fax)

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion to Sever Defendants was sent by e-mail to the following name and address appearing below on the date appearing below my signature line:

> Louis Manzo; Trial Attorney
> Department of Justice
> 1400 New York Ave NW
> Washington, DC 20002

> /S/_____
> Anthony D. Martin, 362-537

Saturday, January 29, 2022