**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-195 (TFH)** |
| | : | |
| **SALVADOR SANDOVAL** | : | |
| **DEBORAH SANDOVAL,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' OMNIBUS OPPOSITION TO DEFENDANT SALVADOR**
**SANDOVAL'S AND DEBORAH SANDOVAL'S MOTIONS**

The government opposes Defendant Salvador Sandoval's "Motion in Limine" (ECF 64) and "Notice of Self Defense (of another)" (ECF 65). The government also opposes Defendant Deborah Sandoval's "Motion for 404(b) Evidence" (ECF 66), "Motion for Discovery and an Evidentiary Hearing in Support of Defendant's Claim of Selective Prosecution" (ECF 67), "Motion for Discovery with Citation of Authority" (ECF 68), "Motion for Early Disclosure of All 'Jenks Act' Material" (ECF 69), "Motion to Require Law Enforcement Officers to Retain Rough Notes and Writings" (ECF 70), "Motion to Compel the Government to Disclose Any Expert Witness" (ECF 71), and "Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses" (ECF 72). All relief sought is either unsupported by law, premature, or unnecessary.

**Statement of Facts**

Deborah Sandoval and her son, Salvador Sandoval, are charged by superseding indictment with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(l); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol Building, in violation of 40 U.S.C.

§ 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Salvador is further charged with obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); civil disorder, in violation of 18 U.S.C. § 231; multiple counts of assaulting a federal law enforcement officer, in violation of 18 U.S.C. § 111(a)(1); engaging in an act of physical violence in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(F); and engaging in physical violence on restricted grounds, in violation of 18 U.S.C. § 1752(a)(4).

These charges stem from Deborah's and Salvador's unlawful conduct at the U.S. Capitol on January 6, 2021. Salvador breached the central doors on the Capitol's east side and proceeded into the Rotunda, where he assaulted a law enforcement officer by stealing a riot shield. Salvador then retreated to the entryway, pushed and grabbed additional officers, and exited the Capitol.

Deborah breached the U.S. Capitol through the west-side Senate doors. She was part of the first wave of rioters who entered after other rioters pushed through a line of law enforcement officers. Deborah entered Senator Merkley's office, took photographs, traversed through the Crypt, and then exited back through the Senate doors.

## Discussion

### 1) Videos Footage Depicting Congress and the Riot Are Admissible to Prove Elements of Charged Offenses.

Salvador moves to supress (i) "any and all video footage…which does not include [him]," and (ii) any evidence mentioning the Oath Keepers, Proud Boys or other groups.  ECF 64. Chief Judge Howell recently denied a near-identical motion, ruling that such evidence is admissible. *See United States v. Bledsoe*, 21-cr-204 (July 13, 2022 minute order) (holding that radio runs, videos, and other evidence were relevant to show how defendant and mob diverted federal resources and

obstructed/impeded an official proceeding under 18 U.S.C. § 1512). The same ruling is warranted here.

As a preliminary matter, the court should dismiss Salvador's motion as overbroad. The motion does not refer to any specific evidence or examples.[1] *See Fakhoury v. O'reilly*, No. 16-13323, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022) ("A court is well within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity") (quoting *United States v. Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002)) (citing *Nation Union v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

Assuming this motion is properly before the court, the government will likely seek to admit the following evidence at trial:

- Radio runs from law enforcement entities recorded during the riot;

- Photos and videos showing the Captiol secured prior to the riot;

- Video compilations of closed circuit television footage showing reaches of the Capitol building and grounds; and

- Video compilation of the Congressional proceedings and Congressional Record, including actions taken regarding the certification of the Electoral College vote and the presence and location of the Vice President.

This evidence establishes the elements of charged offenses and, accordingly, is admissible.

Evidence "is admissible provided that it is 'relevant' and not otherwise prescribed by law or rule." *United States v. Fonseca*, 435 F.3d 369, 75 (D.C. Cir. 2006) (citing Fed. R. Evid. 402).

---

[1] Salvador also seeks to exclude "any evidence mentioning the Oath Keepers, Proud Boys, or other groups which Defendant Salvador Sandoval is not a member." ECF 64 at 2. The government has no intention of eliciting testimony about those groups, but may seek to admit video footage that could include acts by individuals associated with those groups for the purposes of proving essential elements of the charged offenses (i.e. a civil disorder, obstruction of an official proceeding, etc). The government will not name or identify these groups specifically.

A piece of "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Accordingly, "[s]o long as the evidence makes a fact of consequence more or less likely, it is relevant." *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997). That standard is plainly satisfied here because the video footage referenced above addresses the elements of the charged offenses.

Under Section 1512(c)(2), criminal liability arises for "[w]hoever corruptly… obstructs, influences, or impedes any official proceeding, or attempts to do so." 18 U.S.C. § 1512(c)(2). The government's anticiated exhibits are probative of those elements. Regarding the obstruction-of-an-official-proceeding element, the radio runs show that officers struggled to protect members of Congress who had assembled to certify the electorial vote. Similarly, closed circuit footage of the riot and law enforcement response displays the setup of the Capitol and the timing of the breaches—thereby showing how Salvador's actions played a role in interrupting the congressional proceeding. Finally, the video montage of the congressional proceedings confirms that Salvador and the mob succeeded in their efforts to delay and obstruct them.

This evidence is also relevant to other counts. For example, Section 1752(a)(1) punishes "[w]hoever …knowingly enters or remains in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1). The term "restricted building or grounds" includes "any posted, cordoned off, or otherwise restricted area…of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(b). As applied in this case, the Vice President's location and movement—as documented in the government's footage—establish the Capitol and its grounds as "restricted." Furthermore, conduct by law enforcement and other rioters is probative of Deborah's and

Salvador's mental state – whether they knowingly entered or remained in the Capitol without lawful authority. A reasonable jury could find that, in light of the scene in front of them (law enforcement pushing back rioters with alarms ringing and tear gas dispeled), Salvador and Deborah must have known that they had entered and remained in a restricted area without lawful authority.

Similarly, Section 1752(a)(2) punishes "[w]hoever… knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). The conduct by the Vice President, law enforcement, and other rioters—as documented in the video footage—proves both that the Capitol grounds were restricted and that the government's business or official function was disrupted.

Section 5104(e)(2)(D), which punishes acts of physical violence in a Capitol Building, includes a "willfully and knowingly" requirement. 40 U.S.C. § 5102(e)(2)(D). Individuals act "willfully" when they "'act[ ] with knowledge that [their] conduct was unlawful.'" *Rivera*, 2022 WL 2187851, at *6 (quoting *Bryan v. United States*, 524 U.S. 184, 191-92 (1998)); *id.* at *7 ("to act 'willfully and knowingly' is to 'be aware of and knowingly violate[ ] [a] legal obligation not to commit the charged actus reus'") (quoting *United States v. Burden*, 934 F.3d 675, 680 (D.C. Cir. 2019)). Again, the conduct of law enforcement and other rioters—as documented in the video footage—are probative of the defendants' knowledge regarding their unlawful presence inside the Capitol on January 6.

Finally, Salvador is charged with 18 U.S.C. § 231(a)(3), which requires that the government prove that he interferred with a law enforcement officer during a civil disorder.

Although Salvador aided in the civil disorder, he alone did not create it. There was one large-scale riot at the Capitol on January 6, 2021, and Salvador was a participant.  Video and photographs from various locations throughout the Capitol building and grounds will be essential for the government to prove this element to a jury, and Salvador's motion in limine should be denied.

**2)  Salvador Has No Legal Basis to Claim Self-Defense.**

Salvador intends to argue that he acted in defense of another. ECF 65. As a matter of law, Salvador should be precluded from raising this defense.

Salvador is charged with assaulting a law enforcement officer under 18 U.S.C. § 111(a)(1). Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties.  18 U.S.C. § 111(a)(1). A defendant charged under Section 111 may assert, as an affirmative defense, a theory of self-defense, "which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger."  *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982).

This defense, however, contains important limitations.  First, Congress enacted Section 111 "to protect both federal officers and federal functions."  *United States v. Feola*, 420 U.S. 671, 679 (1975).  As a result, "[a]n individual is not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties."  *United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011); *see also United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."). Second, even in circumstances where an individual might be justified

6

in using some force to resist a federal officer, that resistance must be reasonable under the circumstances. *See Abrams v. United States*, 237 F.2d 42, 43 (D.C. Cir. 1956) (observing that "the use of 'reasonable force' only would have been open to defendants"); *see also United States v. Wallace*, 368 F.2d 537, 538 (4th Cir. 1966) (explaining that Section 111 permits "reasonable force employed in a justifiable belief that it is exerted in self-defense"); *United States v. Perkins*, 488 F.2d 652, 655 (1st Cir. 1973) (defendant may be convicted under Section 111 where "he used more force than was necessary to protect the person or property of himself or others").

Both limitations apply here. Within approximately one minute of breaching the east side doors of the Capitol, Salvador proceeded into the Rotunda and assaulted a law enforcement officer by stealing his shield.[2] Salvador then retreated into the entryway of the east door area and assaulted three additional officers. There is simply no basis for Salvador to claim self-defense when he had illegally entered a restricted area of the U.S. Capitol.  The videos further show that no officer used excessive force against Salvador at any time. *Cf. Drapeau*, 644 F.3d 646, 653-654 ("[A]n individual may be justified in using force to resist excessive force used by a law enforcement officer."). As such, the court should preclude Salvador from arguing that he acted in self-defense.

### 3) The Government's Evidence Showing Consciousness of Guilt Does Not Fall Under Fed. R. Evid. 404(b).

Deborah seeks to compel the government to provide notice of other crimes, wrongs, or acts. ECF 66. At trial, the government will seek to introduce evidence pertaining to consciousness of guilt.  But this evidence is intrinsic to the charged offenses and, accordingly, does not implicate Federal Rule of Evidence 404(b). Even if the court found that it was not intrinsic, the government's evidence would still be properly admitted under Rule 404(b).

---

[2] The government intends to play the video of Salvador's assaultive conduct for the court at the pretrial conference. Both videos are less than two minutes in length.

After Deborah and Salvador returned home to Iowa following the riot, they deleted potential evidence and sought to evade capture by law enforcement. Deborah deleted materials from her phone (Facebook message to third party on Feb. 9, 2021: "I erased all") and purchased a phone that, she believed in her own words, could not be tracked (Facebook message to third party on Jan. 20, 2021: "I bought a phone that can't be tracked."). Salvador meanwhile deleted all his social media accounts (including Facebook, Yahoo, LinkedIn, Pinterest, Tumblr, Twitter) on January 9, 2021 and purchased an assault rifle on January 12, 2021. When federal agents executed a search warrant at his home, they seized the assault rifle, two backpacks stocked with ready-to-eat meals, clothing, and a burner phone purchased on January 10, 2021. Such conduct—deleting records of online activity, buying a firearm, and packing an assortment of provisions associated with flight—evidences consciousness of guilt.

This evidence is admissible as intrinsic to the charged offenses because it "arose out of the same transaction or series of transactions as the charged offense," *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996); and it is "necessary to complete the story of the crime of trial." *Id.* *United States v. Tracy*, 989 F.2d 1279, 1285 (1st Cir. 1993) is instructive. There, the district court admitted evidence of the defendant's flight and efforts at concealment. On appeal, the court rejected the defendant's challenge: "[E]vidence of a defendant's flight and attempts to conceal or falsify identity may be presented at trial as probative of a 'guilty mind' if 'there is an adequate factual predicate creating an inference of guilt of the crime charged.'" *Id.*; *see also United States v. Acevedo*, 28 F.3d 686, 688 (7th Cir. 1994) ("The possession of false identification by a drug trafficking defendant at the time of the trafficking, however, is not merely generalized evidence of bad character. Rather, by indicating that the defendant wished to conceal his identity during ongoing involvement with drugs, it can help prove an element of the offense charged, namely that

the defendant possessed a culpable state of mind."). The same is true here. Erasing messages, deleting social media accounts, and assembling provisions indicative of flight in the days after January 6 evidence Deborah's and Sandoval's guilty minds.

Such evidence does not implicate Rule 404(b). "Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992) ("[The evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] intent to distribute and his knowledge about [a co-conspirator's] drug cache."); *see also United States v. Miller*, 799 F.3d 1097, 1105 (D.C. Cir. 2015) ("The Rule does not bar 'evidence . . . of an act that is part of the charged offense.'").

However, even if the court were to find that the above referenced evidence was not intrinsic to the offense, it would still be admissible under Rule 404(b). The defendants' post January 6 actions show their lack of mistake or accident on January 6. They knew they committed a crime, and now it was time to cover it up.

Analysis of the admissibility of bad-acts evidence involves two steps. First, the Court determines "whether the evidence is probative of some issue other than character." *Cassell*, 292 F.3d at 792. Evidence of other crimes is admissible if it "is relevant, relates to something other than character or propensity, and supports a jury finding that the defendant committed the other crime or act." *Id.* (citing *United States v. Bowie*, 232 F.3d 923, 926-27 (D.C. Cir. 2000)). "Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *United States v. Moore*, 732 F.2d 983,

987 n.30 (D.C. Cir. 1984).    Second, the court must decide if the evidence should be excluded under Rule 403 of the Federal Rules of Evidence, *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994), which precludes evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly cumulative evidence," Fed. R. Evid. 403.   "[T]he test under 403 is 'unfair prejudice,' not just any prejudice or harm to the defense"  *United State v. Sitzmann*, 856 F. Supp. 2d 55, 61-62 (D.D.C. 2012).

Both defendants engaged in behavior that is admissible for non-propensity reasons and the evidence's probative value is not *substantially* outweighed by the danger of unfair prejudice. Both defendants deleted electronic evidence in the days immediately following the riot. Further, Salvador prepared for flight by purchasing a burner phone, having bags packed at the ready containing food and other supplies, and purchasing an assault rifle. There is nothing about any of those acts that suggests a person has a propensity to commit an offense. Further, there is nothing unduly prejudicial arising from any of those actions, which are all ordinarily perfectly legal. They do, however, show that the defendants knew they had committed a crime. Since identity is unlikely to be contested at trial, this case will likely turn on the defendants' state of mind during the riot. Consciousness of guilt, including attempts to evade law enforcement, is probative to the charged offenses. As such, even if the court were to find that the evidence was not intrinsically intertwined with the offense, it should still be admitted under Rule 404(b).

### 4)  Deborah is Not Entitled to Discovery in Support of a Selective Prosecution Claim.

Deborah claims that the government has selectively prosecuting her and seeks access to internal documents pertaining to her case. ECF 67. Because Deborah has failed to adduce any evidence supporting her proposition, she is not entitled to such relief.

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted).  This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465.  "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (citation omitted); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).

To overcome that presumption, a defendant must present "clear evidence" that a decision to prosecute was "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464-465.  "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468.  The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Id.*

(citation omitted).  The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id.* at 470.  "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982).

Deborah alleges that the government selectively targeted her for prosecution.  But her motion fails to adduce any credible evidence—as *Armstrong* demands—supporting an inference that (1) the government has treated her differently than other similarly situated January 6 defendants, or (2) any such disparity implicates her political association or another protected class.

In claiming disparate treatment, Deborah asserts that "[t]housands of individuals were present at the United States Capitol Building on January 6, 2021" but "many individuals were not arrested or charged in connection with these events."  ECF 67, at 3.

That the government has not yet charged everyone involved in breaching the U.S. Capitol on January 6 says nothing.  The government has not cleared them of criminal conduct; these individuals have not yet been charged because the government has had to marshal an unprecedented level of investigatory resources to identify and charge each defendant who participated in the U.S. Capitol attack.  As Judge McFadden correctly observed, "the Government continues to charge new individuals with offenses related to January 6."[3]  *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. 2021).  For that reason, Deborah's effort to claim disparate treatment in comparison to an ever-expanding sample size is "unsupportable." *Id.*

Deborah references one individual (Ray Epps) who breached police barricades and trespassed on Capitol Grounds.  ECF 67, at 3-4.  As just explained, the fact that any one person is

---

[3] As of July 7, 2022, the government had arrested 855 defendants for criminal conduct associated with the January 6 attack on the U.S. Capitol.  *See* U.S. Dep't of Justice, "18 Months Since the Jan. 6 Attack on the Capitol," at https://www.justice.gov/usao-dc/18-months-jan-6-attack-capitol (last visited July 31, 2022).  In the intervening month, the government has continued to investigate, arrest, and charge additional individuals.

not presently under indictment fails to demonstrate disparate treatment because the government's investigation and indictments continues to expand.  In addition, Deborah makes no effort to demonstrate that she is similarly situated to Epps.  Deborah, in her own words, "stormed" the Capitol Building and breached Senator Merkley's Office.  All this occurred as "[t]housands of congressional staffers," "hundreds of legislators and the Vice President" were inside the complex to attend "a constitutionally mandated proceeding."  *United States v. Judd*, No. 1:21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).  Given these clear conduct distinctions, Deborah has "failed to make a credible showing of different treatment of similarly situated persons"—as Armstrong's first prong demands.  *Id*. at *6 (internal quotation marks omitted); *see generally Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (asking whether "distinguishable legitimate prosecutorial factors … might justify making different prosecutorial decisions" in the defendant's case) (citation omitted).

With respect to *Armstrong*'s second prong, Deborah failed to adduce any evidence that improper motives undergird this prosecution.  Deborah's motion implies that the government charged her based on her political views.  But Deborah's comparator class—the rioters alongside her in the U.S. Capitol Building—"presumably … share [her] 'politics.'"  *Griffin*, 549 F. Supp. 3d at 58.  That circumstance negates any inference that she has been singled out due to her political associations.  The U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that Deborah's political views played no role in his office's charging decisions in this case.

**5)  The Government Has Provided Full Discovery.**

Deborah seeks to compel discovery. ECF 68. Intervention is unnecessary because the government has provided discovery and complied with its obligations under Federal Rule of

Criminal Procedure 16. The government understands those obligations, is unaware of any outstanding discovery requests, and will work cooperatively with defense counsel to resolve any further disputes.

**6)  The Government Will Produce Any Remaining *Jenks* Material Two Weeks Prior to Trial.**

Deborah seeks to compel the discovery of all *Jenks* materials thirty days prior to trial. ECF 69. Intervention is unnecessary because the government will provide any remaining *Jenks* two weeks before trial.

**7)  The Government Will Produce Handwritten *Jenks* Material Two Weeks Prior to Trial.**

Deborah seeks to compel the discovery of handwritten *Jenks* material. ECF 70. Intervention is unnecessary because the government will provide any handwritten *Jenks* material two weeks before trial.

**8)  The Government Does Not Intend to Call an Expert Witness.**

Deborah seeks to compel the government to provide notice of any expert witness. ECF 71. Intervention is unnecessary because the government does not plan to call an expert witness.

The government has seized photographs, videos, and messages extracted from Deborah's and Salvador's digital devices and social media accounts. The government intends to admit this evidence through lay-witness testimony from FBI special agents who extracted, located, or reviewed this evidence. Where a law enforcement witness testifies about what files he or she found on a digital device or account, the witness does not testifying as an expert. *See United States v. Berry*, 318 F. App'x 569, 570 (9th Cir. 2009) (agent's testimony was not expert testimony because the agent "simply testified to what he found on the [defendant's] hard drive…, without expressing an opinion that required specialized knowledge or offering insight beyond common

understanding") (citing Fed. R. Evid. 702).   If the court disagrees with this position, the government intends to call a FBI Computer Analysis Response Team examiner to testify regarding the extraction of evidence from the electronic devices in this case.   The government will also provide a formal notice of such expert under Federal Rule of Criminal Procedure 16.

**9)  The Government Does Not Intend to Call Any Civilian Witness Who Has Received a Benefit.**

Deborah seeks to compel the government to provide notice of any witness who has received a benefit from the government. ECF 72. Intervention is unnecessary because the government does not plan to call any civilian witness who has received government benefits.

## Conclusion

The government respectfully requests that this Court deny, or, in the alternative, reserve ruling on, the Defendants' Motions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney


  _/s/ Louis Manzo_
LOUIS MANZO
Special Assistant United States Attorney
Massachusetts Bar Number 688337
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.  20530
Telephone: 202-262-6570
 Email: LOUIS.MANZO@USDOJ.GOV

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this motion was served upon counsels of record for the defendants through the electronic court filing system, this 2nd  day of August 2022.


By:   <u>/s/ Louis Manzo</u>
        Louis Manzo
        Special Assistant United States Attorney
        Mass Bar 688337
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 262-6570
        Louis.manzo@usdoj.gov