**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                               |     |                        |
|-------------------------------|-----|------------------------|
|                               |  :  |                        |
| **UNITED STATES OF AMERICA**  |  :  | **Case No.: 21-cr-195-CKK** |
|                               |  :  |                        |
| **v.**                        |  :  |                        |
|                               |  :  |                        |
| **DEBORAH SANDOVAL**          |  :  |                        |
|                               |  :  |                        |
|                               |  :  |                        |
| **Defendant.**                |  :  |                        |
|                               |  :  |                        |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Deborah Sandoval to 3 months incarceration, in the middle of the applicable sentencing range, one year of supervised release, $500 in restitution to the Architect of the Capitol, and a mandatory assessment of $25.

## I.      INTRODUCTION

The defendant, Deborah Sandoval, and her son and codefendant, Salvador Sandoval, Jr.,[1] participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police

---

[1] On December 15, 2022, Salvador Sandoval, Jr. was found guilty of counts 1-12 of the Superseding Indictment. His sentencing is scheduled for August 7, 2023.

officers, and resulted in more than 2.8 million dollars in losses.[2]

Sandoval pleaded guilty to one count of violating 18 U.S.C. § 1752 (a)(1). As explained herein, a sentence of 3 months of incarceration is appropriate in this case because (1) while encouraging her sons and others to join her in Washington, D.C. on January 6, 2021, Sandoval stated in private messages that she was thinking of bringing weapons "because this one could be bad depending on the electoral vote."; (2) on January 6, 2021, after entering the Capitol building through the Senate Wing Doors, she loudly yelled for Nancy Pelosi, the Speaker of the House, to be brought before the angry mob; (3) she paraded throughout the Capitol for almost 25 minutes, longer than many other rioters, and entered several different locations, including the Crypt and the doorway to Senator Merkley's office; (4) following January 6, 2021, she used social media to glorify the political violence that occurred at the Capitol, spread misinformation about the riot being "peaceful," and boasted about her own participation in the riot; and (5) after learning that other rioters faced criminal prosecution for their participation in the riot, she deleted evidence of her own crimes and told other rioters to do the same.

The Court must also consider that Sandoval's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Deborah Sandoval's crime support a

_____

[2] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol were $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

sentence of 3 months of incarceration and one year of supervised release in this case. The recommended sentence reflects the seriousness of the offense, her lack of remorse, and the need to deter others from similar conduct in the future.

## II.   FACTUAL BACKGROUND

### A.   The January 6, 2021, Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol, ECF 103.

### B.   Deborah Sandoval's Role in the January 6, 2021, Attack on the Capitol

Leading up to January 6, Deborah Sandoval sent private messages to several friends and her children about the potential for violence on January 6, 2021, but still encouraged these others to join her. In one such message, sent on December 21, 2020, Sandoval wrote to her other adult son: "Hey we're going back to Washington January 6 Trump has called all patriots if the electors don't elect we will be forced into civil war China has infiltrated our government thru Biden and they are waiting to attack." *See Image 1.*

| | | |
|---|---|---|
| **Facebook Private Message on 2020-12-21T11:44:13Z** | | |
| From | - ID Number: 1527282918 Facebook<br>Username(s): Deborah Sandoval, Deborah3angels | Images |
| To | - ID Number: 100007974286221 Facebook<br>Username(s): ▓▓▓▓▓▓ | |
| Text | Hey we're going back to Washington January 6 Trump has called all patriots If the electors<br>don't elect we will be forced into civil war China has infiltrated our government thru Biden and<br>they are waiting to attack | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p15253), FB_SW_records.pdf: (p9272), FB_SW_records.pdf: (p3730) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL<br>- Identification Number: THREAD ID 10204397922577951 FACEBOOK | |

*Image 1*

When her other adult son replied that he couldn't join her in Washington, D.C. on January

3

6, she responded "we're going to war…we have guns and are getting together with neighbors…" *See Image 2.*

**Facebook Private Message on 2020-12-21T11:50:49Z**

| From | - ID Number: 1527282918 Facebook Username(s): Deborah Sandoval, Deborah3angels | Images(s) |
|---|---|---|
| To | - ID Number: 100007974286221 Facebook Username(s): ▆▆▆▆▆▆▆ | |
| Text | The 6th? Damn that's a bad day to start We're going to war I will send you the post on it Pay attention to my posts Nanna is getting ready we have guns and are getting together with neighbors it is a racial war BLM and ANTIFA want to erase our history and make it theirs and they are calling for people to attack Republican Christians | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p15253), FB_SW_records.pdf: (p3730), FB_SW_records.pdf: (p9272) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL | |

*Image 2*

On December 27, 2020, she wrote to a Facebook friend: "My fiancé has permit to carry as well and I believe we do need to have protection because this one could be bad depending on the electoral vote." *See Image 3.*

**Facebook Private Message on 2020-12-27T16:41:18Z**

| From | - ID Number: 1527282918 Facebook | Images |
|---|---|---|
| | Username(s): Deborah Sandoval, Deborah3angels | |
| To | - ID Number: 100000312661919 Facebook Username(s): ▆▆▆▆▆ | |
| Text | My fiancée has. Permit to carry as well and I believe we do need to have protection because this one could be bad depending on the electoral vote | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p9829), FB_SW_records.pdf: (p5171), FB_SW_records.pdf: (p14927) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL - Identification Number: THREAD ID 10218046075733250 FACEBOOK | |

*Image 3*

She wrote to her son, Salvador, on January 5, 2021, that she bought "…mace for you or Dwayne whoever needs or wants it…" and that she was hoping that he meets her at 5 a.m. *See Image 4.*

4



*Image 4*

Sandoval attended the rally on January 6 and then walked to the Capitol, arriving at the Peace Circle on the west side of the Capitol at about 2:10 p.m.

She had been in communication with Salvador via text message since at least 12:54:23 p.m. Eastern Standard Time (EST). At 2:37:25 p.m. EST she wrote to Salvador again, "We're testing [*sic*] the doors down" and followed up with "At the Capitol," at 2:37:27 p.m. EST. Finally, at 2:37:33 p.m. EST, she wrote to Salvador, "Tear gas." *See Image 5.*



*Image 5*

At 2:49:47 p.m. EST, less than three minutes after the Senate Wing Doors were breached, she entered the Capitol through the Senate Wing Doors, which are located on the northwest side of the Capitol.



*Image 6: Screenshot from Exhibit 1 at 2:49:47 p.m.*

Sandoval entered the Capitol building with her cellphone in her hand. Security video shows that she was holding her cellphone and seemingly recording the entire time she was walking through the Senate Wing Door lobby. She can also be seen recording broken furniture in the lobby area and screenshots of this video were recovered from her cellphone. Shortly after entering, Sandoval yelled "get her ass out here!" Sandoval was referring to Nancy Pelosi, the Speaker of the House. *See* Statement of Offense, ¶ 11. In context, it's clear that Sandoval was demanding that Pelosi be brought out before the angry mob of rioters.



*Image 7: Screenshot of Exhibit 2 at approximately 23 seconds*

Sandoval continued to record on her cellphone as she moved north to the Crypt. *See Exhibit 3.*



*Image 8: Screenshot from security video at 3:03 p.m. side-by-side with Exhibit 3
(video taken by Sandoval at 3:03 p.m.)*

Sandoval remained in the Crypt for several minutes, walking around and taking several photos and videos. She then headed back towards the Senate Wing Doors, continuing to take photos and videos inside the Capitol. At about 3:10 p.m., Sandoval approached Senator Merkley's office and took several photographs of the interior. One of those photos is below. *See Image 9.*



*Image 9*

Sandoval left Senator Merkley's office, returned to the Senate Wing Door hallway, and left the Capitol through the Senate Wing Doors at 3:13 p.m. *See Image 10.*



*Image 10: Screenshot from security video at 3:13 p.m.*

At 3:19 p.m., after leaving through the Senate Wing Doors, Sandoval sent another text message to Salvador, asking "where are you." He replied that he was "inside the back" at approximately 3:22 p.m. *See Image 11.*



*Image 11*

Sandoval remained on the restricted grounds of the Capitol and traveled from the West side of the Capitol building to the East side of the building to meet with Salvador. This picture of Sandoval, Salvador Sandoval, Jr., and a man that entered the Capitol with Sandoval was taken at

3:45:49 p.m. according to the metadata recovered from Sandoval's cellphone. *See Image 12.*



*Image 12*

Instead of feeling remorse for her conduct on January 6, Sandoval was proud of her actions. That evening, she bragged to her other adult son, and others, via Facebook private message. In one of those messages, she wrote "We stormed the cspioto [*sic*]." *See Image 13.*

| Facebook Private Message on 2021-01-06T21:13:14Z | | |
|---|---|---|
| **From** | - ID Number: 1527282918 Facebook<br>Username(s): Deborah Sandoval, Deborah3angels | Images |
| **To** | - ID Number: 100007974286221 Facebook<br>Username(s): ▮▮▮▮▮▮▮▮ | |
| **Text** | We stormed the cspioto | |
| **Flagged?** | yes | |
| **Source** | FB_SW_records.pdf: (p3747), FB_SW_records.pdf: (p15270), FB_SW_records.pdf: (p9289) | |
| **Properties** | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL<br>- Identification Number: THREAD ID 10204397922577951 FACEBOOK | |

*Image 13*

She also posted a video (*Exhibit 3)* that she took inside the Capitol to a private Facebook group. With this video, she posted that there was "no violence and that was inside the capitol Antifa

dresses in Trump wear."

On January 10, 2021, she posted this Facebook status "The media is false they lied completely! January 6 was a peaceful rally I was their [*sic*] so we're [*sic*] babies children and dogs! So was Antifa and their purpose was to destroy our movement with what they are designed to do terrorism!..."

On January 14, 2021, she posted about having "…no regrets…" in her Facebook status. *See Image 14.*

Facebook Status on 2021-01-14T16:59:31Z

| From | - ID Number: 1527282918 Facebook<br>Username(s): Deborah Sandoval, Deborah3angels | Images |
|---|---|---|
| To | | |
| Text | Would I do it again? Do I regret my choice? No regrets here I will stand for what I believe in Always! | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p13141), FB_SW_records.pdf: (p7949), FB_SW_records.pdf: (p1105) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL | |

*Image 14*

On January 16, 2021, she posted photos like the one below from January 6 to a private message chat group on Facebook. The metadata from her cellphone revealed that the photo was taken at 3:10 p.m. on January 6, 2021. *See Image 15.*



*Image 15*

Though proud of her actions, Sandoval was aware what she had done was illegal and that the evidence of her crimes included the pictures she had taken while inside the Capitol and the chat histories that she had on her cellphone. On January 17, 2021, following the arrests of several rioters from January 6, her Facebook records show that she told one private message group that "It's time to shut facebook down I am going to check out gab." On February 9, 2021, she sent a message to a friend on Facebook indicating that she had "No pics no messages" and that "I erased all." *See Image 16.*

**Facebook Private Message on 2021-02-09T15:01:38Z**

| From | - ID Number: 1527282918 Facebook<br>Username(s): Deborah Sandoval, Deborah3angels | Images |
|------|------|------|
| To | - ID Number: 1528749315 Facebook<br>Username(s): ▮▮▮▮ | |
| Text | No pics no messages | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p5700) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL<br>- Identification Number: THREAD ID 10218046929274588 FACEBOOK | |

**Facebook Private Message on 2021-02-09T15:01:27Z**

| From | - ID Number: 1527282918 Facebook<br>Username(s): Deborah Sandoval, Deborah3angels | Images |
|------|------|------|
| To | - ID Number: 1528749315 Facebook<br>Username(s): ▮▮▮▮ | |
| Text | I erased all | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p5700) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL<br>- Identification Number: THREAD ID 10218046929274588 FACEBOOK | |

*Image 16*

A review of the data and images found on her cellphone revealed that Sandoval had in fact deleted some videos from her phone. This is evidenced by the screenshots of videos that were found on her phone, although some of the videos themselves were not recovered. Additionally, on January 31, 2021, a review of the data on her cellphone revealed internet searches of "how do you delete application through settings," after several January 6th rioters had been arrested. *See Image 17.*

| 364 | Web History | | | | 1/31/2021 10:42:26 AM(UTC-6) [Last Visited] | | Deleting iPhone apps is confusing in iOS 14. Here's how to do it - CNET **Source:** Safari **Source file:** iPhone/mobile/Library/Safari/History.db : 0x11391F (Table: history_visits, history_items, Size: 1462272 bytes) |
| 365 | Web History | | | | 1/31/2021 10:44:41 AM(UTC-6) [Last Visited] | | How to delete apps on your iPhone, iPad, and iPod touch - Apple Support **Source:** Safari **Source file:** iPhone/mobile/Library/Safari/History.db : 0x1138B9 (Table: history_visits, history_items, Size: 1462272 bytes) |
| 366 | Searched Items | | | | 1/31/2021 11:11:39 AM(UTC-6) | | how do you delete applications through settings **Source:** Safari **Source file:** iPhone/mobile/Library/Safari/History.db : 0x11378A (Table: history_visits, Size: 1462272 bytes) |

*Image 17*

On February 2, 2021, she also searched "arrest person who took a selfie at capitol." *See Image 18.*

| 400 | Searched Items | | | | 2/2/2021 6:27:53 AM(UTC-6) | | arrest person who took a selfie at capitol **Source:** Safari **Source file:** iPhone/mobile/Library/Safari/History.db : 0x1140A8 (Table: history_visits, Size: 1462272 bytes) |
| 401 | Web History | | | | 2/2/2021 6:28:27 AM(UTC-6) [Last Visited] | | FBI uses selfies, social posts to arrest US Capitol rioters **Source:** Safari **Source file:** iPhone/mobile/Library/Safari/History.db : 0x115F62 (Table: history_visits, history_items, Size: 1462272 bytes) |

*Image 18*

After her arrest on February 19, 2021, Sandoval was interviewed and gave a statement. During her statement, she admitted to entering the Capitol building and taking videos and selfies; however, she minimized her criminal behavior, indicated that she didn't know what she was doing was wrong, and claimed that she entered to help people.

## III.    THE CHARGES AND PLEA AGREEMENT

On December 17, 2021, a federal grand jury returned a Superseding Indictment charging Sandoval with four counts, including Entering and Remaining in a restricted Building or Grounds,

16

in violation of 18 U.S.C. § 1752(a)(1) (Count Seven); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Eight); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Ten); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Eleven). On, December 14, 2022, Sandoval was convicted of Count Seven based on a guilty plea entered pursuant to a plea agreement.

## IV.    STATUTORY PENALTIES

Sandoval now faces sentencing on a single count of violating 18 U.S.C. § 1752(a)(1). As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Sandoval faces up to one year of imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25. The defendant must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

## V.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

In the plea agreement, the government and Sandoval agreed upon the following proposed guidelines calculations:

Count One: 18 U.S.C. § 1752(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2B2.3(a) | Base Offense Level | +4 |
| U.S.S.G. § 2B2.3(b)(1)(A) | Specific Offense Characteristics | +2 |

|  | Total | +6 |
|---|---|---|

ECF 102 at ¶ 5(A). Additionally, the parties agreed to a two-point reduction for acceptance of responsibility. *Id.* The parties agreed the Estimated Offense Level was 4. *Id.*

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. PSR ¶ 47. Accordingly, Sandoval's total adjusted offense level, after acceptance of responsibility, is 4, and the applicable Guidelines imprisonment range is 0-6 months.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

## VI.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence in the middle of the Guidelines range.

### A.     Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds

of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 571 F.Supp.3d 1, 8 (D.D.C. 2021). While assessing Sandoval's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Sandoval, the absence of violent or destructive acts is not a mitigating factor. Had Sandoval engaged in such conduct, she would have faced additional criminal charges.

The most important factors to consider in Sandoval's case are: 1) leading up to January 6, 2021, Sandoval encouraged others to join her in Washington, D.C., including her two sons: Salvador Sandoval, Jr. and her other adult son; 2) she told others that she was bringing weapons, including firearms and mace; 3) Sandoval continued onto Capitol grounds and into the Capitol building despite being sprayed with pepper spray; 4) upon her entrance into the Capitol building, she encouraged further violence by yelling "drag her ass out here," in reference to Nancy Pelosi; 5) she witnessed destruction of property in the Capitol building, including destruction to Senator Merkley's Office, a more sensitive area of the Capitol building; 6) when she witnessed destruction in the Capitol building, she did not try to stop the destruction, but instead took videos and photographs of it; 7) after the riot, she bragged about her participation in private messages and on social media, minimizing the violence and falsely blaming Antifa; 8) in February of 2021, after the arrests of several January 6th rioters, she deleted evidence from her cellphone and social media; and 9) finally, although Sandoval pled guilty on the morning of her trial, she had not, at the time of the writing of the Pre-trial Sentencing Report (PSR) provided the United States Probation Office

with her consent forms or financial history forms, which shows her lack of remorse and her lack of respect for the Court and this sentencing process.[3]

Accordingly, the nature and circumstances of Sandoval's offense support the government's recommended sentence of 3 months' imprisonment and one year of supervised release.

## B. The History and Characteristics of the Defendant

According to the information she provided to the Probation Officer during the preparation of her PSR, Sandoval has received both an associate degree and a bachelor's degree (PSR ¶ 67). She received her associate degree in the field of a legal assistant. Sandoval's level of education and understanding of the law make her actions on January 6, 2021, and following January 6, even more troublesome.

While Sandoval has no criminal convictions, her criminal acts on January 6, 2021, her poor judgment, and her recruitment of her children to join her despite her own expectation of violence, weigh in favor of incarceration.

## C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United*

---

[3] Sandoval and her son, Salvador Sandoval Jr., have an online fundraising page where they have raised $350 of their $50,000 goal. Sandoval has responded to several donations demonstrating a lack of remorse. For example, on or about January 2, 2023, a third party donated $100 and stated, "I'm so sorry for you guys. I'm so sickened by our corrupt government & can't wait until there's a revolution to remove all the criminals in dc." Sandoval responded, "AMEN THANK YOU God Bless."

*States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset

that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (Statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration. While Sandoval has admitted to her conduct, she has expressed no remorse for what she did on January 6. Furthermore, after posting about her participation immediately following the riot and her pride in storming the Capitol, she deleted evidence of her participation – for fear that she would be prosecuted. Sandoval has not cooperated fully with the Probation Office by providing financial disclosure and related consent forms, and in addition to what Probation requires, financial disclosure is a condition of her plea agreement. Sandoval's lack of cooperation with Probation and compliance with her agreement indicate not only a lack of remorse but also an absence of respect for this Court and its officers and demonstrates the need for individualized deterrence. Thus, a sentence of incarceration is warranted to underscore that her conduct was criminal, and to deter her from engaging in lawless conduct in

the future.

**F.     The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4]  This Court must sentence Sandoval based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

Sandoval has pleaded guilty to Count Seven of the Superseding Information, charging a violation of 18 U.S.C. § 1752(a)(1). This offense is a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), apply.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly

---

[4]  A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United *States v. Sanchez,* 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier

'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[5]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

*In United States v. Gracyn Courtright,* 21-cr-00072 (CRC), the defendant pled guilty to one charge of violating 18 U.S.C. 18 U.S.C. § 1752(a)(1). Like Sandoval, Courtright was undeterred by the destruction of the Capitol building as she made her way further into the building while recording videos of the destruction along the way. Like Sandoval, Courtright was in the Capitol building for an extended period of time, remaining in the building for 24 minutes. Additionally, like Sandoval, while inside the Capitol building, Courtright made her way to sensitive areas of the building; in Courtright's case it was to the Senate Chamber. Like Sandoval,

---

[5] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022, Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (Statement of Judge Pan).

Courtright inaccurately posted to social media and direct message conversations that the riot was non-violent and peaceful. Finally, like Sandoval, Courtright stated in social media posts that she was "not embarrassed", reflecting her lack of remorse for her actions on January 6, 2021. Like Sandoval, Courtright faced a guidelines range of 0-6 months. She was sentenced to 30 days of incarceration, followed by 12 months of supervised release, 60 hours of community service, and $500 restitution.

In United States v. William Tyron, 21-cr-00420 (RBW), the defendant pleaded guilty to one charge of violating 18 U.S.C. 18 U.S.C. § 1752(a)(1). Like Sandoval, Tyron was pepper sprayed by police officers prior to entering into the Capitol building on January 6, 2021. Like Sandoval, this did not deter Tyron and he continued to enter the building. Additionally, like Sandoval, Tyron witnessed destruction in the Capitol building. Similar to Sandoval, Tyron also incited the other rioters when he used a microphone outside of the Capitol to chant the lyrics of the song "We're Not Gonna Take It" by rock group Twisted Sister. Finally, like Sandoval, Tyron took photographs and videos both outside and inside of the Capitol building, while on Capitol grounds. Tyron faced a guidelines range of 0-6 months, and was sentenced to 50 days of incarceration, followed by 12 months of supervised release, a $1,000 fine, and $500 restitution.

In United States v. Dennis Sidorski, 21-cr-00048 (ABJ), the defendant pleaded guilty to one charge of violating 18 U.S.C. § 1752(a)(2). Like Sandoval, Sidorski made pre-January 6 social media statements anticipating violence. Sidorski does differ from Sandoval's case in that while outside the Capitol, Sidorski made unwarranted physical contact with a police officer by putting his hand on the officer's shoulder and arm for approximately three seconds. However, thereafter,

like Sandoval, Sidorski entered the Capitol Building, visiting several locations. And, like Sandoval, Sidorski deleted evidence of his crimes after he returned home, deleting his Facebook account and throwing away a distinctive sweatshirt he wore on January 6, 2021. Sidorski faced a guideline range of 12 to 18 months and was sentenced to 100 days of incarceration, followed by 12 months of supervised release, and $500 of restitution.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VII.   RESTITUTION

Under 18 U.S.C. § 3556, a sentencing court must determine whether and how to impose restitution in a federal criminal case. Because a federal court possesses no "inherent authority to order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), it can impose restitution only when authorized by statute, *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C.

Cir. 2011). Two general restitution statutes provide such authority. First, the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *Papagno*, 639 F.3d at 1096. Second, the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA. *Papagno*, 639 F.3d at 1096. The applicable procedures for restitution orders issued and enforced under these two statutes is found in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3556 (directing that sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Both the VWPA and MVRA require that restitution "be tied to the loss caused by the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting the VWPA)

Both statutes identify similar covered costs, including lost property and certain expenses of recovering from bodily injury. *See Papagno*, 639 F.3d at 1097-97; 18 U.S.C. §§ 3663(b), 3663A(b). Finally, under both the statutes, the government bears the burden by a preponderance of the evidence to establish the amount of loss suffered by the victim. *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019).

In deciding whether to impose restitution under the VWPA, the sentencing court must take account of the victim's losses, the defendant's financial resources, and "such other factors as the court deems appropriate." *United States v. Williams*, 353 F. Supp. 3d 14, 23-24 (D.D.C.

28

2019) (quoting 18 U.S.C. § 3663(a)(1)(B)(i)). By contrast, as noted above, the MVRA applies only to certain offenses, such as a "crime of violence," § 3663A(c)(1)(A), or "Title 18 property offenses 'in which an identifiable victim . . . has suffered a physical injury or pecuniary loss,'" *Fair*, 699 F.3d at 512 (citation omitted), but it requires imposition of full restitution without respect to a defendant's ability to pay.[6]

 Because this case involves the related criminal conduct of hundreds of defendants, the Court has discretion to:  (1) hold the defendants jointly and severally liable for the full amount of restitution owed to the victim(s), *see* 18 U.S.C. § 3664(f)(1)(A)(requiring that, for restitution imposed under § 3663, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant"); or (2) apportion restitution and hold the defendant and other defendants responsible only for each defendant's individual contribution to the victim's total losses. 18 U.S.C. § 3664(h). That latter approach is appropriate here.

 More specifically, the Court should require Sandoval to pay $500 in restitution for her conviction on Count 7. This amount fairly reflects Sandoval's role in the offense and the damages resulting from her conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, five hundred dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was not directly

---

[6] Both statutes permit the sentencing court to decline to impose restitution where doing so will "complicat[e]" or "prolong[]" the sentencing process.  *See* 18 U.S.C. §§ 3663(a)(1)(B)(ii), 3663A(c)(3)(B).

and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

**VIII.   CONCLUSION**

For the reasons set forth above, the government recommends that the Court impose a sentence of 3 months' incarceration, the middle of the advisory Guidelines' range of 0-6 months, one year of supervised released, $500 in restitution, and the mandatory $25 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Holly Grosshans*
HOLLY F. GROSSHANS
Assistant United States Attorney
D.C. Bar No. 90000361
U.S. Attorney's Office for the District of
    Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6737
Email:   Holly.Grosshans@usdoj.gov

BRIAN BRADY
Trial Attorney, Department of Justice
D.C. Bar No. 1674360
1301 New York Ave. N.W., Suite 800
Washington, DC 20005
Phone: (202) 834-1916
Email:   Brian.Brady@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 18th day of April 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*/s/ Holly Grosshans*
HOLLY F. GROSSHANS
Assistant United States Attorney
D.C. Bar No. 90000361
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6737
Email:   Holly.Grosshans@usdoj.gov